UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:

WILMA G. ROMERO,

      Debtor.

No. 09-14343-j13

## **MEMORANDUM OPINION**

This matter is before the Court on the Application for Allowance of Fees for the Period of September 8, 2008 through November 30, 2009 ("Fee Application") (Docket No. 36). The Court held a final hearing on February 3, 2010 limited to the issue of the hourly rate charged by Debtor's counsel, and took the matter under advisement. The Fee Application seeks approval of attorneys' fees Cuddy & McCarthy, LLP ("Counsel") charged the Debtor as her counsel in this chapter 13 case. Cuddy & McCarthy, LLP (Daniel J. Behles) appeared at the final hearing in support of the Fee Application.[1] After consideration of the evidence presented and the arguments of counsel,[2] the Court finds that the hourly rate Counsel charged Debtor in this case for services rendered by Mr. Behles was excessive, and that $200.00 per hour is a reasonable hourly rate for those services.

FACTS

Debtor retained Counsel to represent her in her chapter 13 case after being referred to Counsel by another attorney who refers clients to Counsel from time to time. The Debtor commenced her voluntary chapter 13 case on September 24, 2009. Counsel represented Debtor

---

[1] The Chapter 13 Trustee filed an objection to the Fee Application objecting to Mr. Behles' hourly rate in this case. The Chapter 13 Trustee also objected to the amount charged for the preparation of the fee application, and reserved the right to object further based on the fact that a substantial portion of the invoices attached to the fee application was for fees charged in a different case. (*See* Docket No. 41). On March 1, 2010, Counsel amended the fee application to attach the correct invoices. (*Compare* Docket No. 36 *with* Docket No. 50). With the permission of the Court, the Chapter 13 Trustee did not appear at the final hearing.

[2] The Court accepted representations of Counsel, and Counsel's exhibits, as evidence.

in connection with preparation of the chapter 13 case for filing, and in the case. Counsel charged Debtor an hourly rate of $250.00 for services Mr. Behles provided in connection with the case.[3] Debtor filed the case to stop a wage garnishment. Her income is below the median family income in New Mexico for the size of her household.

<u>Mr. Behles' Experience, Expertise, and Customary Hourly Rate.</u>

Mr. Behles is a competent attorney with substantial experience and expertise in bankruptcy cases. He has concentrated his legal practice in the area of bankruptcy law for more than 30 years. In bankruptcy cases he represents creditors, debtors, trustees and committees. He has served as both a chapter 7 and chapter 11 trustee. Mr. Behles is nationally certified in both business and consumer bankruptcy law by the American Board of Certification, and is certified as a specialist in both business and consumer bankruptcy law by the New Mexico Legal Specialization Board. He has held a New Mexico real estate broker's license and New Mexico general contractor's license, and taught business law for several years at the University of New Mexico Anderson School of Management. Mr. Behles has also been a member of the Board of Bar Commissioners of the State Bar of New Mexico for approximately 10 years. A substantial portion of Mr. Behles' legal practice consists of representing parties in interest in chapter 11 cases. His usual and customary billing rate, including in chapter 11 cases, is $250.00 per hour.

Counsel presented evidence that Mr. Behles has represented debtors in a total of fifteen chapter 13 cases since 2004, of which two were filed in 2008 and two in 2009.[4] The allowed fees for chapter 13 debtor's counsel in the fifteen cases averaged $5,247.11 per case, and ranged from $2,921.76 to $10,115.97 per case. The total legal fees to debtors' counsel in those cases

---

[3]Counsel charged Debtor a total of $4,447.65 consisting of $3,000 for twelve hours of work performed by Mr. Behles at $250.00 per hour, $851.50 for services rendered by paralegals at $65.00 per hour, costs of $328.61 (which included the $274.00 filing fee), and $267.54 for gross receipts tax.
[4] The fifteen cases in which Mr. Behles represented chapter 13 debtors include cases in which Cuddy & McCarthy, LLP, or another firm where Mr. Behles was then employed, was debtor's counsel.

averaged 6.87% of the total plan payments per case, and ranged from 2.51% to 71.66% of plan payments per case.

Customary Rates Charged by Chapter 13 Practitioners in this District

Counsel presented statistical evidence of a random sample of seventeen chapter 13 cases filed in 2009 involving nine different debtors' counsel who file a high volume of chapter 13 cases in New Mexico on behalf of chapter 13 debtors. The sample was random but not scientifically selected as a representative sample. In those seventeen cases, debtors' counsel charged between $180 and $200 per hour. Counsel stated that customary hourly rates in this district for counsel who represent chapter 13 debtors generally range between $175 and $200 per hour. The fees in the seventeen sampled cases averaged $3,501.85 per case, and ranged from $2,100 to $9,990.75 per case. The total fees to debtors' counsel in the cases averaged 11.180% of the total plan payments per case, and ranged from 5.92% to 98.82% of plan payments per case.

The Complexity of the Case At Bar.

Debtor's bankruptcy case is a simple, routine chapter 13 consumer case, considering both the nature of the legal issues involved and the amount of the Debtor's assets and liabilities. Debtor's plan, as modified by the confirmation order, provides for monthly payments to the Chapter 13 Trustee in the amount of $635 for 60 months. Plan payments will be applied to the following claims: 1) the secured claim of a creditor whose claim is secured by a Pontiac vehicle; 2) administrative claims, including the Chapter 13 Trustee's commission and Counsel's attorneys' fees; and 3) unsecured non-priority claims. Total plan payments will yield an estimated dividend of 8% to holders of unsecured non-priority claims.[5]

---

[5] The plan payments are $635 per month for 60 months. Of that amount, $475 per month plus an arrearage of $180 is to be paid to the holder of the claim secured by the Pontiac. Of the funds that remain, approximately $3,800 are to

Debtor's assets consist primarily of her residence (scheduled as unknown in value), a Pontiac vehicle acquired within 910 days of the bankruptcy filing, and a retirement account. Debtor's assets are scheduled as having a total value of $27,702.31, excluding her residence. Debtor's vehicle and retirement funds account for approximately 85% of the value of her assets, excluding her residence. Debtor's liabilities consist of approximately $41,575 of secured debt and $23,270 of unsecured non-priority debt.[6] (See Docket Nos. 1, 34 and the Claims Register). There are a total of three creditors holding secured claims, and approximately 25 creditors holding unsecured non-priority claims. *Id*. No unsecured priority debts, executory contacts or unexpired leases, or codebtors are scheduled. (Docket Nos. 1 and 34). Schedules I and J show monthly income of $2,871 ($2,108.82 net) and monthly expenses of $1,944.00.

The Debtor filed a motion to value the Pontiac vehicle for purposes of bifurcating the claim secured by the vehicle. (Docket No. 12). The Debtor withdrew the motion after her Counsel learned that the Debtor purchased the vehicle within 910 days of the petition date, so that the claim could not be bifurcated. (Docket No. 17). The withdrawal of the motion to value was followed by an amendment of the plan in order to account for the larger secured claim of the lender, and also required a rescheduling of the confirmation hearing. (*See* Docket Nos. 18 and 21). The Debtor also amended her schedules after Nuvell Credit Company ("Nuvell") filed a proof of claim and the Chapter 13 Trustee objected to the plan in order to add Nuvell as a creditor and to add a second vehicle pledged as security to Nuvell. (*See* Claim No. 5 and Docket No. and Claim No. 5).

---

be paid for chapter 13 trustee fees and approximately the same amount for attorneys' fees. That leaves approximately $1,800 to pay approximately $23,270 of unsecured non-priority claims. See Docket Nos. 1, 13, 18, 34, 35, 39 and 41, and Claim Nos. 5 and 6).

[6] The schedules reflect total unsecured non-priority debt of $19,689.32, after removing a duplicate entry. Nuvell Credit Company also has an unsecured non-priority claim in the amount of $3,581.87. (See Claim No. 5-2).

Counsel represented that he did not know Debtor purchased the Pontiac within 910 days of her bankruptcy filing because she did not have a copy of her purchase contract on the Pontiac vehicle.  Counsel further represented that the Debtor did not realize she owned the second vehicle since it was driven by her brother.  Nuvell later obtained a default order modifying the stay as to the second vehicle. (Docket Nos. 39 and 41).

## DISCUSSION

Approval of compensation in a chapter 13 case is governed by 11 U.S.C. §330(a). Under 11 U.S.C §330(a)(4)(B), debtor's counsel in a chapter 13 case is entitled to "reasonable compensation  . . . for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section."  11 U.S.C. §330(a)(4)(B).  Such other factors set forth in 11 U.S.C. §330(a)(3) are:

> (A)    the time spent on such services;
> (B)    the rates charged for such services;
> (C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

The fee applicant bears the burden of demonstrating the reasonableness of the requested compensation.[7] The starting point for determining a reasonable hourly rate "is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *In re Williams,* 357 B.R. 434, 438-439 (6th Cir. BAP 2007)(citing *Blum v. Stenson,* 465 U.S. 886, 895-96 n.11, 104 S.Ct. 1541, 1547 n.11, 79 L.Ed.2d 891 (1984)).[8] Based on the evidence presented to the Court regarding the prevailing hourly rates charged by Chapter 13 practitioners in this district, Counsel's requested hourly rate is significantly higher than the upper limit of the range of rates typically charged by debtor's counsel in chapter 13 cases in this district.[9]

In defense of his higher hourly rate, Counsel argues that most of his chapter 13 clients are business people with more complicated cases who seek him out to represent them. He argues that in evaluating requested attorneys' fees in chapter 13 cases the Court should consider the best interest of the debtor in addition to the interests of creditors, and should give some deference to a debtor's decision to retain counsel of choice who charges a higher hourly rate. The Court agrees that some deference should be given to the debtor's choice of counsel. However, in a typical chapter 13 case, the debtor has little

---

[7] *See In re Recycling Industries, Inc.,* 243 B.R. 396, 403 (Bankr.D.Colo. 2000)(stating that "[i]t is well settled that the burden of proof as to the reasonableness of compensation is on the fee applicant.")(citing *In re Narragansett Clothing Co.,* 210 B.R. 493, 497 (1st Cir. BAP 1997)(remaining citation omitted).

[8] *See also, In re Martinez,* 266 B.R. 523, 542 (Bankr.S.D.Fla. 2001)(stating that "'[a] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation.'")(quoting *Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir. 1994)(quoting *Norman v. Housing Authority*, 836 F.2d 1292, 1299 (11th Cir. 1988)(internal quotation marks omitted)).

[9] In sampling the prevailing market rate for similar services by lawyers of reasonably comparable skills, experience and reputation, the Court is not confined to the community of chapter 13 debtors' attorneys in this district. *See In re McClanahan,* 137 B.R. 73, 74-75 (Bankr.M.D.Fla. 1992)(noting that "Congress rejected the 'principle of economy' in determining fees, in part because of the belief that attorneys and professionals serving in a case under Title 11 should be compensated at the same rate that other professionals would be compensated for performing comparable services in cases *other than those under Title 11*")(emphasis added)(citing 124 Cong.Rec. H 22,091-2 (Sept. 28, 1978); S 17,408 (Oct. 6, 1978)). However, the only evidence before the Court of hourly rates charged by other attorneys was the hourly rates charged by Chapter 13 debtors' attorneys in this district.

or no economic incentive to limit legal fees.[10] Because a debtor contributes all disposable income to the plan over the plan term for distribution to unsecured creditors, unless the plan pays all claims in full, the amount paid to debtor's counsel is irrelevant from the debtor's perspective.[11] A higher legal fee simply reduces the distribution to unsecured non-priority creditors.[12] As a result, unless the plan proposes a 100% dividend to unsecured non-priority creditors, greater scrutiny by the Court is warranted.

Counsel argues that the key consideration in determining the reasonableness of an attorney's hourly rate should be the skill, experience and efficiency of the attorney, not the complexity of the case. He asserts that an attorney should not be penalized for being more efficient or for being a more skilled negotiator. Counsel urges the Court to take into account the fact that his charges in chapter 13 cases generally, as a percentage of total plan payments made by his chapter 13 clients, are less than the fees charged by other attorneys in his sample as a percentage of total distributions under the plan in their cases even though their hourly rates were lower.

---

[10] *See In re Atwell*, 148 BR 483, 489 (Bankr W.D.Ky. 1993)(reasoning that "[u]nlike Chapter 11 and 12 where debtors can keep all monies earned over and above the proposed plan payments and Chapter 7 cases where fees are generally paid by the debtors out of their own funds and not from property of the estate, there is little or no financial incentive for the debtors to negotiate hourly rates and/or attorney fees because Chapter 13 debtors are generally required to pay all their disposable income into the plan.").

[11] *Atwell,* 148 B.R. at 489 ("Whether that money ultimately is paid to the debtor's attorney, the prepetition creditors or the Chapter 13 trustee makes no economic difference to the debtor since these payments are no longer available to them.")(citing *In re Bush,* 131 B.R. 364, 365 (Bankr.W.D.Mich. 1991)).

[12] This appears to be true even in above median income debtor chapter 13 cases. *See, e.g., In re Echeman*, 378 B.R. 177, 182 (Bankr. S.D. Ohio 2007) (above median income debtor's attorneys' fees may be deducted in part to determine disposable income, and paid in part from projected disposable income); *In re Williams,* 394 B.R. 550, 564-65 (Bankr. D. Colo. 2008) (above median income debtors may subtract all of their priority claims in determining the amount of their projected disposable income); *In re Wilbur*, 344 B.R. 650, 654-55 (Bankr.D.Utah 2006) (same). *See also, In re Nething*, 2008 WL 2246072, at*4 (Bankr. E.D.Wis. 2008) (above median income debtor's attorneys' fees are paid from disposable income and are included as part of the payment to unsecured creditors contemplated by § 1325(b)(1)(B)); *In re Puetz*, 370 B.R. 386, 391-92) (Bankr. D. Kan. 2007) (same). *But cf. In re Amato*, 366 B.R. 348, 352 (Bankr.D.N.J.2007) (above median income debtor's attorneys' fees may not be paid from disposable income, but court does not address whether attorneys' fees may be subtracted in determining projected disposable income).

Counsel also urges the Court not to approve different hourly rates depending on whether the law firm represents a debtor in possession in a chapter 11 or 13 case or depending on the level of complexity of the case. He points out that the level of complexity of a chapter 13 often cannot be determined at the outset of the case when the hourly rate is set. Counsel reasons further that a different approach would dissuade some of the more capable attorneys from representing chapter 13 debtors because they would not be able to charge the same hourly rate that their skill and ability otherwise merit.

The Court agrees with Counsel that the ultimate issue to be determined under 11 U.S.C. § 330 is the overall reasonableness of the fees charged, and that the hourly rate is only one component of the reasonableness calculus. The Court also agrees with Counsel that the skill, experience and efficiency of the attorney are relevant to the determination of a reasonable hourly rate. However, the Court disagrees that the amount an attorney charges debtors generally in chapter 13 bankruptcy cases as a percentage of the average amount the debtors pay creditors under a confirmed chapter 13 plan is by itself relevant to the reasonableness of the attorneys' hourly rate in those cases. The percentage computation merely illustrates the debtor's overall ability to pay and has no relation to the complexity of the case or the skill required to render competent legal counsel. Consequently, the Court rejects the argument that a low percentage of attorneys' fees in relation to the total payments made under a plan serves as an indicator of reasonableness of an attorneys' hourly rate.

To assess the reasonableness of debtor's counsel's requested hourly rate in a bankruptcy case, the Court finds that, in addition to the prevailing market rate, the skill of the attorney, and the attorney's customary hourly rate, the level of complexity of the case,

both legally and factually, and the degree of skill required on the part of counsel to provide competent or exceptional representation of the debtor under the facts and circumstances of the particular case, are all relevant factors.[13] These additional factors are particularly relevant where, as here, the hourly rate charged is significantly higher than the upper limit of the range of rates typically charged by competent chapter 13 debtor's attorneys in this district.[14]

The fact that Counsel is competent to handle a more complex matter fails to justify a significantly higher hourly rate when the matter is not complex, and the case does not involve any novel or particularly difficult issues. Greater efficiencies of a more skilled lawyer do not necessarily translate into lower charges when the lawyer handles relatively routine, repetitive tasks. Competent lawyers with less experience or skill in more complicated matters who charge lower hourly rates handle the same, less-complicated routine tasks as competently and efficiently as attorneys with greater skills to handle complex cases. Greater skill and experience do not justify a significantly higher hourly rate when the greater skill is not applied to the tasks performed and where the greater experience in complex matters does not benefit the debtor or the estate. This is not to suggest that a higher hourly rate may never be justified in a chapter 13 case, or that Counsel would not be entitled to a higher hourly rate in a chapter 11 case. The

---

[13] *See McClanahan,* 137 B.R. at 76 (taking into account the hourly rates charged by chapter 11 practitioners in "mega cases" which "require an attorney to practice on a much more sophisticated level than that which is required in a routine Chapter13 case" in order to find that a lower hourly rate should be charged in a chapter 13 case with only 11 creditors); *Atwell,* 148 B.R. at 490 (reasoning that "in all types of bankruptcy proceedings there is a wide range of problems and difficulty which may be encountered and that the most difficult and complex cases should be compensated at a higher rate than a routine matter."). *See also, In re Spillane,* 884 F.2d 642 (1st Cir. 1989)(upholding district court's reduction in hourly rate which was based on the court's assessment that the rate was high for that type of case).

[14] *See Atwell,* 148 B.R. at 489 (finding that the consideration of customary fees of comparable attorneys should be used primarily "when hourly rates of a particular attorney significantly exceed the typical range for hourly rates requested in *similar bankruptcy cases.*")(emphasis in original)(citing *Spillane,* 884 F.2d at 647).

determination of a reasonable hourly rate must be made on a case by case basis, taking into account the complexity of the case and any other relevant factors.[15] A complicated chapter 13 case could merit Counsel charging his higher customary hourly rate.[16] But the case now before the Court was not an unusually complex chapter 13 case, and Counsel has not demonstrated any other factors relevant to the case that would justify a higher rate.

The Debtor's case is a relatively simple, straightforward chapter 13 case. From a legal standpoint, this case is simpler than many routine chapter 13 cases. The Debtor filed her chapter 13 case to protect her car and to stop a wage garnishment. Debtor's principal assets consist of a house, a car, and a retirement account. Her total debts are approximately $65,000, and her monthly income is less than $3,000. The dividend to unsecured creditors is about 8%. No motions to value needed to be filed, and no motions to assume or reject contracts or leases were required. There is no evidence that the Debtor was behind on filing tax returns, or that there were any tax issues involved. The Debtor did not guarantee any third party debts.

Counsel counters that even though this chapter 13 case did not present complicated legal issues, it was nevertheless complex from the standpoint of representing a debtor with poor records, making it difficult to assemble and analyze information necessary to complete the Debtor's Statement of Currently Monthly Income and her Schedules I and J. The difficulty caused by the Debtor's lack of records fails to justify a

---

[15] *See In re Sharp,* 367 B.R. 582, 584 (Bankr.E.D.Mich. 2007), *aff'd,* 2007 WL 3203134 (E.D.Mich. 2007)(assessing the reasonableness of attorneys' fees in a Chapter 13 case, and stating that "[c]ourts should consider the following factors in determining reasonable hourly rate: the attorney's customary rate; comparable rates of comparable attorneys in the local area; quality of legal services provided; the skill of attorney; and the *novelty or difficulty of issues presented in the case*.")(citation omitted)(emphasis added).

[16] *See Atwell,* 148 B.R. at 490 (acknowledging that Chapter 13 practitioners need not always be compensated at an hourly rate less than Chapter 11 practitioners).

higher hourly rate in this instance. Although Counsel needed to gather information from the client to prepare her Form B22 and her schedules, the evidence does not demonstrate that such work was significantly more complex than in a typical chapter 13 case.

## CONCLUSION

Taking into account the range of attorneys' fees charged in this district by Chapter 13 practitioners, Counsel's skill, experience and efficiency, and the complexity of this chapter 13 case, the Court finds that a reasonable hourly rate for Mr. Behles in this case is $200.00. By limiting counsel to $200.00 per hour in this case, the Court is not determining the reasonableness of Counsel's hourly rate in a complicated 13 case or a chapter 11 case. An order consistent with this Memorandum Opinion establishing Counsel's reasonable hourly rate will be entered.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: March 12, 2010

COPY TO:

Daniel J. Behles
Cuddy & McCarthy, LLP
Attorneys for Debtor
7770 Jefferson NE, Suite 305
Albuquerque, NM 87109

Kelley L. Skehen
Chapter 13 Trustee
625 Silver Ave., Suite 350
Albuquerque, NM 87103

Office of the United States Trustee
PO Box 608
Albuquerque, NM 87103